## ATLANTIC COAST LINE R. CO. v. BALTIMORE & O. R. CO.

### No. 2325.

District Court, D. Maryland.

Nov. 8, 1935.

Arthur W. Machen, H. Vernon Eney, and Armstrong, Machen & Allen, all of Baltimore, Md., for plaintiff.

Charles R. Webber, of Baltimore, Md., Gen. Counsel for Baltimore & O. R. R., for defendant.

CHESNUT, District Judge.

In this case the plaintiff is seeking an accounting from the defendant and, based thereon, a fair division of joint rates for transportation of citrus fruit from Florida collected by the defendant from consignees on the delivery of the freight. The case is perhaps a natural sequel to Baltimore & Ohio Railroad Co. v. United States, 9 F. Supp. 181, where a three-judge district court, for the Eastern District of Virginia, refused to annul and set aside an order of the Interstate Commerce Commission determining the proper division between northern and southern carriers (with gateway at Richmond, Virginia) of joint rates for through carriage of citrus fruit from Florida to points north of Washington, D. C. As there classified the plaintiff here is a southern carrier, and the defendant a northern carrier. The order of the Commission, made effective June 1, 1934, also required readjustment between the carriers of the divisions as thus fixed to the prior date of November 22, 1930, at which time the complaint of the southern carriers for determination of the divisions was filed with the Commission. See Atlantic Coast Line R. R. Co., et al. v. Arcade & Attica R. R. Corp. et al., 194 I.C.C. 729; Id., 198 I.C.C. 375. The joint rates as to which divisions were thus made by the Commission, had been prescribed by the Commission effective November 9, 1928. R. R. Com'rs v. Aberdeen & Rockfish R. Co., 144 I.C.C. 603. As the order of the Commission for readjustment between the carriers was not effective antedating November 22, 1930 (and could not have been made effective for an earlier period, by reason of the limitation contained in the Interstate Commerce Act, § 15(6), as amended by the Transportation Act of 1920, § 418, 49 USCA § 15 (6), the plaintiff is now seeking an extension of the readjustment as made by the Commission or as otherwise may be properly determined to be just and reasonable for the period between November 9, 1928, when the new prescribed rate became effective, and November 22, 1930, when the complaint was first filed with the Commission. The opinion of the three-judge case above referred to (9 F.Supp. 181) was filed December 1, 1934. An appeal therefrom is now pending in the Supreme Court of the United States. The instant suit was filed April 18, 1935.

The defendant's motion to dismiss the bill of complaint presents a three point defense: (1) The court is without jurisdiction of the cause; (2) limitations, and (3) defect of parties. They will be discussed in this order.

The first defense is the principal one and the one of most general importance.

The answer to it must be found in the proper construction and effect of section 15(6) of the Interstate Commerce Act as amended by the Transportation Act of February 28, 1920, c. 91, § 418, 41 Stat. 486. See U.S.C., title 49, § 15(6), 49 USCA § 15(6). By this section the Commission is authorized to prescribe the just, reasonable and equitable divisions of joint rates, fares or charges in interstate commerce (whether the rates were agreed upon by the carriers or otherwise established); "and in cases where the joint rate, fare, or charge was established pursuant to a finding or order of the commission and the divisions thereof are found by it to have been unjust, unreasonable, or inequitable, or unduly preferential or prejudicial, the commission may also by order determine what (for the period subsequent to the filing of the complaint or petition or the making of the order of investigation) would have been the just, reasonable, and equitable divisions thereof to be received by the several carriers, and require adjustment to be made in accordance therewith."

It will be observed that the Commission is not given power to make the readjustment effective antedating the filing of the complaint before it. In this respect the amendment changes the particular statute as it was in force from 1910 to 1920 which authorized the Commission (but only on failure of the carriers to agree) to prescribe the proper divisions of joint rates "which order shall take effect as a part of the original order." 36 Stat. 551, § 12. That is to say, the statute formerly authorized the Commission in making proper division of joint rates, to require adjustment as between the carriers back to the date of the original order of the Commission prescribing the particular joint rate. The statute as amended in 1920 was considered at some length by the Supreme Court in Brimstone R. & Canal Co. v. United States, 276 U.S. 104, at page 121, 48 S.Ct. 282, 286, 72 L.Ed. 487, where Mr. Justice McReynolds, speaking for the Court said:

"Section 15(6) should be construed in the light of the recognized difficulties. Under the earlier act a clear distinction was made between joint rates 'agreed upon' and those 'determined and prescribed' by the Commission after full hearing 'to be thereafter observed.' The Commission had power to declare proper divisions of those in the latter category by order 'which shall take effect as part of the original order'— that is from the date the rate was pre-scribed. Whether it could determine divisions of agreed rates for the future was not clear; but certainly it could not require readjustments of divisions of such rates for past periods. Morgantown & Kingwood Divisions, 40 I.C.C. 509, Id., 49 I.C.C. 540, 551. Section 15(6) established the right to prescribe future divisions of agreed rates, but we think the studied purpose was to grant no power to require readjustments of past receipts from agreed joint rates. Theretofore power in respect of past divisions existed only when rates had been determined and prescribed after full hearing—that is: where the Commission had passed upon the reasonableness of the rate and required observance. Obviously a carrier may have assented to a through rate only because of the divisions accorded to it: to permit the Commission to change this arrangement as to past transactions would be exceedingly harsh, if not wholly unreasonable. Ordinarily, divisions of a particular rate are not of public interest if the rate itself is reasonable. Probably aware of hardships under the old rule, the new act shortened the time during which readjustment might be required—limited its beginning to the commencement of investigation or filing of complaint."

Clear as this language is with respect to the factual situation before the court, in its explanation of the limitation as to the period for required adjustment of divisions, the language used would seem not to have application to the quite different situation involved in the present case. There the court was dealing with the readjustment of rates previously agreed upon but here the situation is quite different and would seem not to have been in contemplation in the language used in the Brimstone Case. The divisions here as made by the B. and O. Railroad, which are now sought to be readjusted, were never agreed upon by the northern and southern carriers, but on the contrary the proper divisions were a constant source of dispute and negotiation from the period when the joint rate as prescribed by the Commission took effect on November 9, 1928, until November 22, 1930, when the southern carriers filed their complaint with the Commission. At the request of the court, counsel in this case have been at pains to make an examination of the legislative history of section 15(6) as amended in 1920 but the result of the search is substantially negative with respect to the particular amendment with which we are here concerned as to the period during which

readjustments can be required by the Commission. The situation with which we are here dealing does not appear to have been given consideration, or at least was not the subject of any recorded comment or discussion.

We are not here concerned with the history of joint rates for citrus fruit from Florida to northern points prior to the rate prescribed by the Commission effective November 9, 1928. This history is stated at some length by Judge Soper in Baltimore & O. R. Co. v. U. S. (D. C.) 9 F.Supp. 181. It is also repeated substantially by the plaintiff in its bill of complaint in this case. For present purposes it is sufficient to state that joint rates between northern and southern carriers had been agreed upon by them prior to the reduction in the joint rates as prescribed by the Commission effective November 9, 1928. The order of the Commission fixing a new and lower rate naturally terminated the prior agreement between the carriers. A new agreement was necessary and indeed required by the Interstate Commerce Act, § 1(4), as amended, 49 USCA § 1(4).

"It shall be the duty of every common carrier * * * in case of joint rates, fares, or charges, to establish just, reasonable, and equitable divisions thereof as between the carriers subject to this chapter participating therein which shall not unduly prefer or prejudice any of such participating carriers."

Despite the fact that the joint rate, the division of which had previously been agreed upon by the carriers, was reduced by the Commission, the northern carriers insisted on a revised basis of division between themselves and the southern carriers which yielded to the northern carriers absolutely higher rates than they had been receiving under the prior agreed upon division, although the joint rates were reduced. The situation in this respect was summarized by Judge Soper in Baltimore & Ohio R. Co. v. U. S. (D.C.) 9 F.Supp. 181, 185, as follows:

"According to a test covering the shipping season of 1928–1929, the northern lines, as collectors of the freight, retained in this manner an average of 78 cents per ton more than they had received under the former rates and divisions to New England and trunk-line territory. Since the through rates to this territory were reduced 35 cents per ton on the average, there was a loss of revenue to the southern lines of $1.13 per ton, which, it is estimated, increased the revenues of the northern lines, in the three subsequent seasons, by $1,215,510 over those which they would have received under the former divisions; while the revenues of the southern lines were reduced by $1,761,420."

In insisting on the new basis of division, in disregard of the objections of the southern lines, the northern carriers acted as did certain carriers in Alton R. Co. v. United States, 287 U.S. 229, 53 S.Ct. 124, 126, 77 L.Ed. 275, where the Supreme Court said:

"The connecting carriers were legally without power to reduce the divisions of the Alton over its objection. If they deemed its divisions unreasonably large, they could have invoked the power of the Commission to make a reduction. Instead of applying to the Commission to adjust the existing divisions, they resorted to force. Availing themselves of their strategic position as collectors of the freight, they withheld from the Alton a part of what was due it."

The principal legal contention of the defendant on this point is that the Interstate Commerce Act must be regarded as a comprehensive regulation of the national railroad transportation system completely vesting in the Interstate Commerce Commission authority over the management of the railroads, their rates and charges to the public, and the division thereof between themselves, as legislative and administrative matters, to the exclusion of the courts. And the proposition is deduced therefrom that as the Act does not authorize the Commission to make readjustment of divisions of rates between the carriers except from the time of the filing of complaint with the Commission, there is no jurisdiction in the courts to grant such relief. And with respect to the amendment made by the Transportation Act of 1920 in section 15(6), the contention is that the effect of the amendment was merely to shorten the period for effective action by the complaining carrier. In this connection it is pointed out that orders of the Commission of this nature cannot become effective in less than 30 days (see section 15(2), as amended, 49 USCA § 15(2) and in the particular case when the new reduced rate was prescribed by the Commission in 1928, a period of four months (until November 9, 1928) was fixed before the order became effective. The argument is that this four months' interval furnished a reasonable time to the southern carriers

to file their complaint before the Commission with respect to the divisions of the new prescribed rate and that the southern carriers having failed to act within this time are now debarred from any other remedy.

Authority for this position is said to be found in the decisions of the Supreme Court beginning with Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075, and running through numerous intermediate cases until and including Board of Railroad Commissioners v. Great Northern Ry. Co., 281 U.S. 412, 50 S.Ct. 391, 74 L.Ed. 936. This line of cases determined that, in view of the whole scope and effect of the Interstate Commerce Act, to provide for uniformity of rates and to prevent discriminations, it is essential that the determination of reasonable rates and charges, being of a legislative and administrative nature, must, at least primarily, be fixed by the Interstate Commerce Commission as a body specially created by law and having the ability based on wide experience in intricate matters of fact, to exercise sound administrative supervision over the national transportation system; and thus resort to the courts may not be had in any such matters until the Commission has first acted. And it is further pointed out by the defendant that in Terminal R. R. Ass'n of St. Louis v. United States, 266 U.S. 17, 30, 45 S.Ct. 5, 8, 69 L.Ed. 150, the Supreme Court said:

"The making of rates is a legislative and not a judicial function. * * * The division of joint rates is also legislative in character. The Interstate Commerce Commission is authorized to establish through routes and joint rates and to prescribe conditions upon which such routes shall be operated, and to fix divisions of such rates among carriers. Section 15(1), (3), (6), Interstate Commerce Act, as amended by Act Feb. 28, 1920, § 418, c. 91, 41 Stat. 485, 486 [49 USCA § 15(1, 3, 6)]. It is well settled as a general rule that the question of the reasonableness of rates or of divisions of joint rates will not be considered by the courts before application has been made to the Commission."

As against this view of the effect of the limitation as to readjustment contained in section 15(6) there are other considerations advanced by the plaintiff in this case which, on the whole, I consider controlling. In the first place, there are other provisions of the Interstate Commerce Act which must be considered in this connection. Section 9 of the original Act of February 4, 1887 (49 USCA § 9), still unamended, provides that:

"Any person or persons claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt."

And it is also provided in section 22 of the act, as amended (49 USCA § 22):

"and nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

The nature of the plaintiff's claim is clearly one that existed at common law for which it would have had a right of action, either at law or in equity, before the passage of the Interstate Commerce Act. This would seem to require no elaboration. Therefore the ultimate question is merely whether the Act has destroyed the common law remedy and substituted therefor exclusively redress by the Commission with the limitations provided in section 15(6). Clearly the section does not expressly prohibit relief by the courts where the power to give it is not conferred upon the Commission. And other sections of the Act as above noted, in terms expressly preserve the common law remedies. For the contention of the defendant to prevail it therefore must be found that the Interstate Commerce Act by necessary implication has barred the common law remedy. In my opinion the cases relied upon by the defendant do not go to this length. They do not rule that resort to the courts is absolutely barred under all conditions, but only that resort must first be had to the Commission. The courts never did have the power to prescribe or determine what is a reasonable rate for a common carrier to charge for the future but did at common law have power to determine in a proper case, whether rates which had been charged by the carrier were reasonable. No case has been called to my attention in which courts have determined either for the past or for the

future proper divisions between carriers of joint rates but, apart from the Act, it would seem clear enough on principle that such jurisdiction must exist with respect to past transactions, as the nature of the plaintiff's case is a suit for money had and received by the defendant as to which the plaintiff is asking an accounting. Prior to the Interstate Commerce Act such a case was not likely to arise because common carriers were not obliged to accept goods for carriage beyond their lines (apart from statute), and when they did so, it is natural that there should have been an agreement between the carriers as to their respective charges. Now, however, by the terms of the Act, carriers are required to make reasonable joint rates for through transportation and on their failure to do so such rates may be prescribed by order of the Commission.

It is probable that the last word has not yet been judicially spoken or written to precisely define the line of demarcation between the initial jurisdiction of the courts and the Commission in matters covered by the Interstate Commerce Act or to determine with finality in just what cases the courts may not act except after initial resort to the Commission. The subject is quite extensively reviewed in United States Nav. Co., Inc. v. Cunard S. S. Co., 50 F. (2d) 83, 86, by the Circuit Court of Appeals for the Second Circuit where it was said by Circuit Judge Augustus N. Hand:

"But, in spite of the provision in the Interstate Commerce Act that nothing contained therein 'shall in any way abridge or alter the remedies * * * existing at common law or by statute' and that its provisions 'are in addition to such remedies' (49 USCA § 22), the Supreme Court has been increasingly disposed to treat the remedies afforded by that act as exclusive. * * * .

"It is said that remedies afforded by the Interstate Commerce Act have been held exclusive only where administrative questions have been involved. But the tendency to extend the requirement of a preliminary inquiry by the Commission is significant. * * *

"It seems evident that the Supreme Court, after first holding in the Abilene Case [Texas & P. R. Co. v. Abilene Cotton Oil Co.], 204 U.S. 426, 27 S.Ct. 350, 51 L. Ed. 553, 9 Ann.Cas. 1075, that prior resort to the Commission must be had where uniformity of rates is affected by the decision of a question of fact, has proceeded far beyond the natural limitations of such a doctrine, and has, in general, insisted upon prior resort to the Commission wherever complicated questions of fact will arise and experience in technical matters is required."

The plaintiff here does not dispute the proposition that this suit could not be maintained without the prior determination by the Commission of what is a just division of the joint rate. Its answer is that the Commission has in fact determined the reasonable divisions and therefore the condition precedent seemingly required by the Supreme Court cases has been gratified in this case. The plaintiff does not ask the court to act without the benefit of the ruling of the Commission; but the Court is asked to extend the operation of the ruling into a period antecedent to that within the power of the Commission; or, with the benefit of the Commission's determination as to the proper division for the future, to apply such other rule in making division for the omitted period as may be properly applicable. It is, also pointed out that the conclusions of the Commission as to what would constitute reasonable divisions of the joint rate for the future were based very largely on testimony as to the movement of traffic within the period now in question; that is to say, in 1928 to 1930. It is suggested that in the absence of testimony showing the inapplicability of the Commission's finding to this period, the court might well apply the rule of division as fixed by the Commission to the period antecedent to the filing of the complaint.

After a review of the cases, I reach the conclusion that the controlling consideration as to whether the court has jurisdiction in this case is to be found in the answer to the question whether the exercise of this jurisdiction would necessarily be inconsistent with the Interstate Commerce Act as a whole (49 USCA § 1 et seq.). And in my opinion this question must be answered in the negative. Conceding that it would have been preferable for Congress to have committed the readjustment of the rates with respect to the period now in question primarily to the Commission, and that the Commission as an expert body constantly dealing with matters of this kind is much better equipped to pass on the question than the courts, it still does not follow that the plaintiff ought to be remediless in this case; nor that the essential purposes of the Interstate Commerce Act would be frustrated by the exercise of jurisdiction here.

The underlying reason for the holding that in administrative matters resort must be had to the Commission before judicial action is that only thereby can the fundamental purposes of uniformity and lack of discrimination be accomplished. This is more obvious with respect to the public interest in reasonable rates and no discrimination between shippers than with respect to fair division of reasonable rates between particular carriers. Doubtless it is of public interest, in view of the vital importance of preserving the integrity of the national transportation system as a whole, that reasonable divisions of joint rates between carriers should be primarily determined by the Commission. But to the extent that Congress has withheld power from the Commission to make readjustment of past collected reasonable rates, there would seem to be no sufficient public interest adversely effective to deny to carriers in the situation of the plaintiff as outlined in the bill of complaint, the remedy which it seeks. The construction of the amended section 15(6) here contended for by the defendant seems to be quite unreasonable. As applied to rights which had accrued at the time of the amendment it would seem to be lacking in due process of law. And as to future relations between carriers with respect to joint rates, it would seem to have the effect of putting the collecting carrier in the position of forcing its own will as to the proper division of the joint rate upon the connecting carriers for any period prior to the filing of a complaint with the Commission which, as in this case according to the bill, may have been reasonably required to reach an agreement. It is conceivable that the collecting carrier in such a case might wilfully prolong the negotiations for an agreement to its own profit. In the case of agreed divisions it is entirely reasonable, as pointed out by the Supreme Court, in the Brimstone Case, to limit readjustment by the Commission to the time of the filing of a complaint by the dissatisfied carrier which wishes thereby to terminate the agreement but the situation is entirely different in the case where there has been no agreement as to divisions.

The defendant contends that as the plaintiff bases its rights on the Interstate Commerce Law it must be understood in effect to concede that it has no remedy at law but is limited to such rights and remedies only as are afforded by the Interstate Commerce Act. Plaintiff's counsel succinctly answers this contention as follows:

"The basic right which the Plaintiff seeks to enforce existed at common law. It is reaffirmed, regulated, modified, and clarified by statute. But, inasmuch as the statute provides no remedy (for the period anterior to the filing of the petition with the I. C. C.), the Plaintiff is obliged to invoke, for the enforcement of that basic right for that period, its common law, or rather non-statutory, remedy. The statute so far abridges this remedy as to provide in effect, though not in words, that the remedy shall be suspended until after the action of the I. C. C. on the petition fixing the divisions for the future; but except to that extent the remedy is expressly preserved by section 22 of the Interstate Commerce Act, which declares in part as follows—

" 'Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.' "

In my opinion the position taken in this answer is sound.

On this point of the case, as to the legal merits of the plaintiff's cause of action, the conclusion reached seems to be in substantial accord with the holding of District Judge Dickinson in the Eastern District of Pennsylvania in the recently decided case of this same plaintiff against the Pennsylvania Railroad, for a similar cause of action (12 F.Supp. 720). This conclusion is also supported by the reasoning of the Circuit Court of Appeals for the 8th Circuit in Backus-Brooks Co. v. Northern Pac. Ry. Co., 21 F.(2d) 4, 15.

Limitations: The defendant contends that the plaintiff's suit is barred by the Maryland statute of limitations which, for actions of account, is the period of three years from the time the cause of action accrued. Maryland Code, art. 57, § 1. The revelant dates in the case are that the plaintiff's claim covers the period from November 9, 1928, to November 22, 1930. The order of the Commission prescribing the divisions was effective June 1, 1934. This suit was instituted April 18, 1935. It is, therefore, obvious that if the plaintiff's cause of action accrued even so late as November 22, 1930, and the Maryland statute is applicable, the case is barred by limitations.

But the plaintiff advances numerous reasons against the application of the statute. These are (1) that the statute is not applicable because the provisions of the Interstate Commerce Act are so comprehen-

sive with respect to the whole subject matter that state statutes of limitations must be regarded as superseded by the act; and inasmuch as the Act itself prescribes periods of limitations for different causes of action, the case must be controlled by such provisions, if they are applicable, and if none are applicable then there is no statute of limitations which governs the matter, either federal or state; (2) even if the Maryland statute is generally applicable, it is not effective in the particular case because it is said that the jurisdiction in equity here is exclusive and not merely concurrent with that at law, and in such a case laches and not limitations is the rule to be applied in equity; (3) failing this, nevertheless the statute is not a bar because the cause of action did not accrue until after the Interstate Commerce Commission had initially determined proper divisions and, therefore, the suit was within the three-year period allowed and (4) the suit is said to be for the enforcement of an express trust and therefore not subject to limitations; and (5) the suit is based upon a specialty, to wit, a statute, and therefore the period of limitations in Maryland is twelve and not three years.

I find it unnecessary to discuss all these points. It is clear that if there is a period of limitations provided in the Act applicable to this situation, it supersedes the state statute of limitations. Meeker v. Lehigh Valley R. Co., 236 U.S. 412, 423, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas. 1916B, 691; Louisville & N. R. Co. v. Cory, 54 F.(2d) 8 (C.C.A.6). The Interstate Commerce Act, § 16(3) (a) (b) and (c), as amended, 49 USCA § 16(3) (a–c), provides periods of limitation for different classes of complaints. They are as follows:

"(a) All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after.

"(b) All complaints against carriers subject to this chapter for the recovery of damages not based on over charges shall be filed with the commission within two years from the time the cause of action accrues, and not after, subject to subdivision (d) of this paragraph.

"(c) For recovery of over charges action at law shall be begun or complaint filed with the commission against carriers subject to this chapter within three years from the time the cause of action accrues," etc.

These provisions seem to contemplate actions or complaints between carriers and shippers, and not between carriers only. (a) and (c) also seem clearly inapplicable because the complaint here is not for the recovery of "charges" or "overcharges." (b) literally applies only to complaints before the Commission but has been extended by construction (to accomplish uniformity and avoid discrimination) to suits at law. A. J. Phillips Co. v. Grand Trunk Western Ry., 236 U.S. 662, 35 S. Ct. 444, 59 L. Ed. 774; Kansas City So. Ry. Co. v. Wolf, 261 U.S. 133, 43 S.Ct. 259, 67 L.Ed. 571. If it were applicable here at all, it would seem to have been gratified, so far as filing complaint with the Commission is concerned, as the complaint there was filed November 22, 1930, less than two years after the first months division was due under the Commission order that became effective November 9, 1928. But this suit is not one for "damages" and counsel for both parties so agree. Therefore, as there is apparently no applicable federal statute of limitations, the state statute, rather than no statute, governs. Chicago & N. W. Ry. Co. v. Ziebarth, 245 F. 334 (C.C.A.8). This is also the rule with regard to civil suits under the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15 note). Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Glenn Coal Co. v. Dickinson Fuel Co. (C.C.A.) 72 F.(2d) 885, 890. But, treating the Maryland statute as generally applicable, it is not a bar in this case, because as has already been noted, the suit in court is not maintainable until after the Commission has preliminarily acted on the subject of divisions, and therefore the cause of action did not accrue until the Commission had acted. This would seem to be clearly the effect of the Backus-Brooks Case, supra, where it was said:

"The relief which the complainant here seeks so far as divisions of joint interstate rates are concerned is two-fold: Relief in the future from an alleged unjust, unreasonable, and inequitable division between the Minnesota Company and the other carriers involved, and reparation for damages suffered on account of alleged unjust, unreasonable, and inequitable divisions in the past. It is clear upon the authority of Great Northern Ry. v. Merchants' Elevator Co., supra [259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943], that in both cases preliminary resort to the Commission is required. When the Commission has determined the preliminary and fundamental question of what is

a just, reasonable and equitable division of the joint rate, the court, predicating its action upon that fundamental fact, may, in the exercise of a proper judicial function, grant relief for the past wrongs. It follows that, in order for the Minnesota Company to obtain the relief it here seeks, it must first invoke the aid of the Interstate Commerce Commission, and secure a determination of what is a just, reasonable, and equitable division of the joint rates between it and the other carriers involved.

"This is true because the question of just, reasonable, and equitable divisions for the future is a legislative question, which only the Commission may determine, and because the preliminary determination of that question is a prerequisite to the right to obtain judicial relief for past wrongs."

This case in the 8th Circuit seems to be the only precise prior adjudication of the question here involved. And it is said by counsel for the plaintiff that the southern roads, throughout this controversy with the northern carriers, have acted in deferring their suits until after the Commission had acted, on the authority of this sole appellate decision. The position is reasonable. It is to be noted that the complaint before the Commission was filed within two years after the plaintiff's claim first arose, and therefore the proceeding before the Commission began before the expiration of the three-year period allowed by the Maryland statute. The plaintiff could not sue in this court until after the Commission had decided the case. It did so sue here within less than a year after the order of the Commission became effective, June 1, 1934. We do not therefore have to deal with what might be a more difficult situation, if the plaintiff had delayed filing the complaint before the Commission until after the expiration of the three years allowed by the Maryland statute. I hold, therefore, that the plaintiff's suit is not barred by limitations. And similarly it is apparent it is not barred by the peculiarly equitable doctrine of laches.

*Defect of Parties:* Finally, the defendant contends that the plaintiff's suit may not be maintained by reason of the absence of indispensable parties. It appears from the plaintiff's bill that some part of the traffic moved over one or more southern lines in addition to that of the plaintiff, and also moved from the Richmond gateway over the Richmond, Fredericksburg & Potomac Railroad until delivered by the latter to the defendant carrier at Washington.

It is said by defendant's counsel that these other southern carriers and the R. F. & P. as a northern carrier, are indispensable parties. As to so much of the plaintiff's claim as was involved in carriage of one or more southern railroads in addition to that of the plaintiff, there is more force in the contention that they are indispensable parties than with respect to the R. F. & P. And it may be contended that the suit is not maintainable anyhow with respect to that portion of the traffic because the Commission itself has made no apportionment of the joint rates between the southern carriers themselves but has only fixed the divisions between the southern carriers as a class and the northern carriers as another class. But this view, if sound, obviously goes only to a part of the whole bill and would not properly result in its dismissal, especially as it is stated without contradiction that the very much greater portion of all the traffic here involved originated on and was carried by the Atlantic Coast Line, the plaintiff, to the Richmond gateway where it was delivered to the R. F. & P. and by the latter to the B. and O. The real question therefore on this point is merely whether the R. F. & P. is an indispensable party to this case. Although the bill does not expressly so allege, it is not disputed as a fact that the northern terminus of the R. F. & P. R. R. is in Washington and that it has no lines in the district of Maryland and does not do business in this State and is, therefore, not subject to service of process from this court. It is suggested that this is such a well known fact in Maryland that the court can take judicial notice of it but if necessary the plaintiff offers to amend its bill and so expressly allege. The point may, therefore, be dealt with on the assumption of the truth of this fact. This being so, the provision of U. S. C., title 28, § 111 (28 USCA § 111), and Equity Rule 39 (28 USCA following section 723), are in point. They provide in effect that in federal equity jurisprudence the absence of a party not subject to the process of the court, or who could not be made a party without destroying the jurisdiction of the court, is not fatal to the maintenance of the suit unless absolutely indispensable; that is to say, the absence of persons who in the general equity sense would be proper or even necessary parties will not defeat the jurisdiction unless their presence is absolutely indispensable to the relief to be granted. Shields v. Barrow, 17 How. 130, 15 L.Ed. 158; Payne v. Hook, 7 Wall. 425, 19 L.Ed.

260; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 54 L. Ed. 80; Cobb v. Interstate Mortgage Corp., 20 F.(2d) 786 (C.C.A.4); Commercial Casualty Ins. Co. v. Lawhead, 62 F.(2d) 928 (C.C.A.4); Edenborn v. Wigton, 74 F.(2d) 374 (C.C.A.5); Rose v. Saunders, 69 F. (2d) 339, 342 (C.C.A.9).

In my opinion the R. F. & P. R. R. is not an indispensable party to the suit. No relief is asked against it. The order of the Commission divided the joint rate between the northern and southern carriers as classes. In those cases where the traffic here involved moved over the Atlantic Coast Line as the sole southern carrier (if the standard for the division as determined by the Commission is to be here applied) the defendant has not paid to the plaintiff the fair division to which it is entitled. And this is true whether the defendant in fact has over paid the R. F. & P. or not. Even if it has, that would seem to be no justification for withholding from the plaintiff the amount to which it is fairly entitled. The plaintiff at no time and in no way assented to the division, which was made by the defendant on its own initiative and responsibility. Of course no opinion is intended to be expressed on the ultimate merits of the case. We are dealing now only with the case as made by the bill of complaint.

For these reasons I conclude that the motion to dismiss the bill must be overruled and it is so ordered. The defendant may answer within five days as required by the general equity rule. If further time is needed, an extension can be applied for.