KEELYN v. CAROLINA MUT. TELEPHONE & TELEGRAPH CO.

AMERICAN BONDING & TRUST CO. OF BALTIMORE CITY v. SAME et al.

(Circuit Court, D. South Carolina.    October 26, 1898.)

RAILROADS — PREFERENTIAL LIENS FOR LABOR AND MATERIALS—TELEGRAPHS AND TELEPHONES.

The doctrine of the federal courts which recognizes the claims of those furnishing labor or supplies necessary to keep a railroad a going concern as entitled to priority of payment over its mortgage indebtedness is applicable to telegraph and telephone lines, which are given the power of eminent domain, and otherwise recognized as important public agencies of modern business and commerce.

Hearing on Claims for Preferred Liens for Labor and Supplies Furnished the Defendant Company.

Mordecai & Gadsden, for employés, etc.

E. W. Hughes, for purchaser.

SIMONTON, Circuit Judge.    This case comes up upon claims made by persons who have furnished supplies to the Carolina Mutual Telephone & Telegraph Company and others who have been employed by it.    The supplies are of material essentially necessary in keeping up and maintaining the telegraph lines.    The employés are ladies who have been employed at the telephone exchange and the superintendent in charge.    It is admitted that these employés are not protected under the labor acts of the general assembly of South Carolina.    If they can be protected at all, it must be under the doctrine established in Fosdick v. Schall, 99 U. S. 235.    This was the first of a series of cases which recognize that claims may exist against an insolvent railroad company which are superior to the lien of a mortgage debt.    The theory is that railroads are a peculiar property, of a public nature, discharging a great public work.    They cannot be built without the interposition of the sovereign power.    When built, they serve a great public purpose.    Railroads connect distant points.    That they are common carriers is but a small part of their office.    They are not only the arteries of trade.    They civilize, develop, and enrich large sections of country.    Cities, towns, and villages, farms and factories, spring up on their line.    They make intercommunication of vital importance to thousands.    They are the means of transporting troops, munitions of war, and supplies, promoting and preserving tranquility in times of peace, and connecting and creating strategic points in times of war.    They are public highways.    Public interest—the highest public interest—requires that when constructed they be kept up,—be kept, as the phrase is, a

"going concern." Being so important, the courts look with favor upon everything which keeps a railroad a going concern. To this end, the first application of its earnings must be made. The stockholder subscribes, and the bondholder lends, his money with knowledge of this. Neither of them can get anything until the current expenses are paid. Upon this assurance, all persons who furnish labor and supplies are encouraged to give credit to the railroad and to contribute to keeping it a going concern; and if, perchance, through inadvertence, or for any other cause, any portion of the earnings have been applied to interest or dividends, leaving current expenses unpaid in whole or part, this is a diversion which the court will certainly correct. Bound v. Railway Co., 50 Fed. 314. Such seems to be the doctrine, and the reason for the doctrine, of Fosdick v. Schall. Thus far the supreme court has never applied the doctrine in any case except that of a railroad. It certainly cannot be applied to corporations of a purely private character. Wood v. Deposit Co., 128 U. S. 421, 9 Sup. Ct. 131. The question of its application to telegraph or telephone companies has never been made. If we are governed by the reason of the doctrine, its application to a telegraph and telephone company is not difficult. Like railroads, these lines are very important instruments of interstate commerce. They are means of communication between all points on the globe. They are of the most essential importance to the government in time of war and to the people in time of peace. Under the act of congress of 1886, they are made agents of the government, and have its special protection upon certain conditions. This company has complied with these conditions. They can exercise the right of eminent domain. It does appear as if the public have as much interest in keeping a telegraph and telephone company a going concern as they have a railroad company; and so the doctrine laid down in Fosdick v. Schall, and the current of cases of which it is the source, would seem applicable also to telegraph and telephone cases.

In the present case it will be extended at least in aid of the operators. They depend for their daily living on their daily wages. They clung to their positions, and stood by the corporation, in despite of failure to secure pay. They, at great sacrifice, kept it a living concern. They enabled it to retain its list of subscribers, so that when it was offered for sale, instead of being an abandoned wreck, it was in active daily operation. The claims of those who furnished supplies are by no means as strong as these. Let an order be taken for the payment of the operators and other employés their wages for 90 days before the appointment of the receiver.