ATLANTIC COAST LINE R. CO. v. PENN-
SYLVANIA R. CO.
No. 8609.

District Court, E. D. Pennsylvania.
June 19, 1935.

See, also (D.C.) 12 F.Supp. 726.

Henry S. Drinker, Jr. (of Drinker, Biddle & Reath), of Philadelphia, Pa., for plaintiff.

John Hampton Barnes (of Barnes, Biddle & Myers), of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.

Leave was given to file a brief which has been submitted. As affecting the cause of action, there are no facts in controversy. The bill is for an accounting which may involve a long inquiry. Whether the plaintiff has a right to it, and thus a right of action, can be determined on this motion. The present motion has been made to raise this question.

### The Fact Situation.

The subject concerns the carriage of citrous fruits from Florida to distant states. The haul is made over what became a continuous line of railroad. This is made up of the lines of a number of railroad companies, including the plaintiff and defendant. A convenience so great as to be a practical necessity brought it about that the delivering carrier received payment for the whole haul. The defendant held this strategic position and has received the moneys due all the carriers. The Interstate Commerce Commission had fixed a joint through rate of charge. This under the agreement of the carriers was apportioned among them. In July, 1928, the commission, on application or its own initiative, changed the rate both as to the sum charged and the unit of carriage on which based. The new rate became effective November 9, 1928. This disrupted the agreement of division among the carriers. The commission did not at that time apportion the joint through rate among the carriers. The defendant thereafter divided the joint through rates it collected and paid to the other carriers what it thought to be fair and just. The other carriers, or at least the plaintiff, were dissatisfied, and negotiations looking to a new agreement of division were begun and continued for two years or more without result. Application was then made to the commission for an order apportioning the joint through rate among the several carriers. Such order was made effective November 22, 1930. Since then the defendant has shared the joint rate in accordance with this division. No retroactive reparation award for the division of the moneys which had been collected by the defendant during the period from November 9, 1928, to November 22, 1930 was asked for. It is to get an accounting for these moneys that the present bill has been filed. It will be noted that none of the carriers concerned have been made parties to the bill other than the plaintiff and defendant.

A number of grounds in support of the motive to dismiss have been advanced. These we will discuss under separate paragraphs. The one first discussed presents the real question asked to be determined. This to some extent overlaps several of the others.

### Discussion.

1. The question is whether the bill discloses a cause of action and a right of action, if these are not the same. Any difficulty encountered in seeking an answer to this question is due to the confusion of mind resulting from the confounding of two wholly different things. The judgment formed may be predicated upon what we know as principles of law or of equity which are antecedent to any statutory recognition of them, or it may be based upon a right conferred by statute which would not otherwise exist. The right of a person injured by the negligence of another to recover damages, and the right of surviving kindred to recover the damages sustained by them through his death, are illustrations of the distinction made.

Before the regulatory acts, constituting the tribunals known as "Public Utilities Commissions," the relations between shippers and carriers were wholly contractual. This meant in practical effect that carriage charges were determined by the carriers. The primary purpose of these acts was to relieve the shipper from the payment of extortionate rates.

Without something more appearing than the payment of an unduly high rate, no shipper could recover through an action at law or in equity any part of an agreed payment, no matter how high it

might be thought to be. Under the operation of those acts, however, a fair rate can be found, and the shipper from whom more has been exacted is given the right to recover back the excess. The theory of recovery is assimilated to legal principles, in that in theory the commission makes the contract and the shipper recovers under the contract thus made. It is true that the Interstate Commerce Act (49 USCA § 1 et seq.) not only gives this cause of action and right of action to the shipper, but gives him likewise the option to apply to the commission or to the courts for redress. It is settled, however, beyond the need of the citation of supporting authorities, that the shipper does not have this right without the preliminary finding of the commission.

■ It follows that if the instant case involved a finding of whether the rates, with which the cause concerns itself, are undue and unfair, we must hold with the experienced and capable counsel for the defendant, that the commission has the exclusive power to determine it. Not only does the legal principle invoked call for this, but there are many and obvious practical reasons which support the ruling. Many of the latter which call for the commission to fix the lawful rate of charge apply with equal force to the division of joint through rates among the carriers. Accordingly the power to apportion such rates was added to the power given to the commission to fix them. It must be admitted that as the fixing of rates calls for the exercise of a trained and expert judgment, so likewise does the division of joint rates. It does not follow, however, that the like rule of the exclusive jurisdiction of the commission applies to both. The Interstate Commerce Act (49 USCA § 1 et seq.) creates new rights not before existing, but it does not take away any legal rights before possessed. The fixing of just and fair rates is in no way involved. Such fixing is wholly incidental. At what the lawful rate is fixed does not affect the right of the plaintiff. Its right is to its share of what the defendant has received to the use of itself and the other carriers. Had the Interstate Commerce Law not been passed, if the defendant had collected for all the carriers a sum of money for a joint haul, each carrier concerned would have had the right to its fair share of the common fund. This would have been its legal and equitable right, a right which the Interstate Commerce Act neither confers nor takes away. The right is not even affected except to the extent that the commission having determined what a fair division is, all parties are bound thereby. The finding is, however, not necessarily retroactive.

We concede the soundness of the proposition for which counsel for defendant have cited abundant authority, that a finding that a rate is fair during one period is not a finding that a like rate is fair during another period. The proposition would apply to a finding of a fair division. If, therefore, the right of a carrier to its fair share of a joint rate is one conferred by the Interstate Act, it follows that no one of the carriers could recover a share of the joint rate without a previous finding that the share claimed was its fair share. The right, however, is not conferred by the statute, but exists without it and, as we have said, has not been taken away by it.

As we have also in effect said that if, before the act, the defendant had received what it has received for a joint haul, it could not retain for itself the whole sum received nor by the same token could it decide how much it would retain. Any of the carriers concerned, if it sued at law, would base its claim on the legal principle embraced in a count for moneys had and received by the defendant to the use of the plaintiff, and if it brought a proceeding in equity would base it upon the equitable principle that one who receives moneys for another is a trustee bound to account in equity. The rights thus asserted would be rights not conferred by the commission statute, but pre-existent and remaining after it.

We remind ourselves of what has already been said that a just division calls for the like expert judgment as does a fair rate. The courts may thus give a deference to the finding of the commission which they would withhold to their own. There are not, however, the same reasons for deferring to a division judgment as to a fair rate judgment. The latter affects all and should be uniform. The judgment of a division of this fund affects only the parties and no one else.

The arbiter who has not an expert knowledge of railroading conditions may

experience difficulty in deciding what is a fair division. The difficulty, however, would not justify the court in declining to exercise a jurisdiction which it possessed. The practical mind might reach a division based on a comparison of mileage haul, on the division which the carriers had themselves before made, on the division which the commission made to apply after November 22, 1930, or adopt some other basis. The commission in making its division may undoubtedly consider the public interests as well as those of the carriers and be influenced in its division by the financial needs of the several carriers. New England Divisions Case, 261 U.S. 184, 43 S.Ct. 270, 67 L. Ed. 605.

■ What the proper principle of division may be can be determined by the court when the division comes to be made. A phrase employed by the resourceful counsel for the defendant quite forceably presents the distinction upon which this case may be ruled. It is that the court is asked to determine a fair and just division of joint rates. This carries with it the strong intimation that the court can no more do this than it could determine what is a fair and just rate. In a very real sense the court does determine a fair and just division of joint rate receipts. This, however, is merely because the moneys came from that source. This is merely incidental and accidental. What the court is asked to do is to determine how much of a sum of money received by a trustee belongs to his cestui que trustent. This it finds independently of the source from which derived. This particular fund happened to come from freight carriage receipts. If it had any other origin, the jurisdiction of the court would have been the same. Hence the source is unimportant. What the courts decide is not what is a fair and just division of joint through rates among participating carriers, but what is the fair share of the plaintiff in a sum of money received by the defendant for services rendered by both. This remains true notwithstanding that it is also true that the two may happen to be the same. This indicates that the bill will lie. It only remains to inquire how far the conclusion indicated is in accord with the adjudged cases. Counsel for the defendant confidently rely upon Atlantic Coast Line R. Co. v. Florida, 295 U.S. 301, 55 L. Ed. 713, 79 L.Ed. 1451, ruled April 29, 1935; Backus-Brooks v. Northern Pacific R. Co. (C.C.A.) 21 F.(2d) 4.

The first case is in line with the view we have taken. The right to the disputed moneys there was determined upon equitable principles, as we hold it should be determined in the instant case.

The second case was a proceeding in equity primarily to determine the proper apportionment among participating carriers of joint through rates to be received in the future. The commission had made no division. The court ruled that this was for the commission, not the courts. Were this the like case, we would follow it by making the like ruling.

The comments in the opinion which counsel criticize as obiter would indicate that if that case were as the instant one, that court would have sustained it to the extent of awarding to the plaintiff the like share awarded by the finding of the commission. As to this we express no opinion. The case stands for the proposition that had there been no division found by the commission as a fair division for the future, the court could not decree one. As before stated, we would follow this. Here, however, this had been done by the commission. Hence the court is not being asked to do this, but to do the whole different thing of deciding how much of the moneys in the hands of the defendant belong to the plaintiff. These two things, as before stated, are wholly different notwithstanding that it happens that the results are the same in figures.

One ground for the motion has been considered. The others will appear as discussed.

2. Underlying all is the thought of the absence of jurisdiction generally. This embraces many things. One is jurisdiction of the subject-matter, in that no cause of action or none cognizable in equity is disclosed. This is a proceeding in equity. We dispose of this as a general proposition without discussion by the statement that the bill avers in effect that defendant is trustee for the plaintiff in that the defendant has moneys belonging to the plaintiff for which the defendant should account and prays for an accounting.

We think jurisdiction in equity is shown by the bill. One of the particular grounds of complaint of the bill on

the score of the absence of a cause of action has been discussed; the others will be discussed later under paragraphs devoted to each.

Another element of jurisdiction is that of the parties litigant including that of whether all necessary parties have been made parties. Of this we will likewise treat later.

Still another element of jurisdiction is that of the court in which the action or proceeding is pending. No such question is raised, because diversity of citizenship, and that the sum in controversy exceeds the required jurisdictional sum, are averred.

3. The bill is criticized on the specific ground that the cause of action is statutory, jurisdiction to determine which is vested not in the courts of the United States but in the Interstate Commerce Commission, the jurisdiction of which latter tribunal is exclusive. We have already discussed this. Did this controversy involve the question of the establishment of lawful rates of charge for carriage of freight by railroads engaged in interstate commerce, it must be admitted that without the statute there would be no cause of action and that no tribunal other than the commission could determine what was or what was not a lawful rate. No such question, however, arises. The commission has found the lawful through joint rates for hauls in which more than one carrier has or may have a part. Here the moneys with which this controversy concerns itself are moneys received by the defendant for through joint rate hauls in which several railroads participated, including the plaintiff. The defendant happened to be in the strategic position of being the delivering carrier and because of this receiving the whole charge for the carriage. There is a practical necessity that this should be. Surely no one would assert that because of this circumstance the delivering carrier would have the right to retain what was paid for the whole haul. By the same token it could not retain an undue share of it. As before indicated, the cause of action which any of the carriers would have against the delivering carrier would be on the implied assumpsit arising out of the fact that the latter had received moneys to the use of the former. The other fact that the moneys so received were for transportation services rendered in interstate commerce would not negative a cause of action otherwise existing. The fixing of a lawful rate for carriage is purely incidental. As before stated, without the statute the relations of shipper and carrier would be wholly contractual. No shipper could recover from the carrier any part of freight paid under an agreement of carriage no matter how excessive it might be thought to be. If, however, the haul was a through joint haul made up of successive hauls in part by different carriers and, by arrangement among themselves the delivering carrier received the total charge, it would be received for the use of all for which the receiving carrier would be bound to account. When the statute intervenes and the commission establishes a lawful charge for the carriage, this primarily is for the benefit of the shipper in that it limits the total sum payable to all the successive carriers. If a rate is fixed for the part of the haul of each and for the through haul made up of the aggregate of all, no one could doubt that the carrier which received the through haul charge must account to the others. When however, as is the case before us, the lawful charge for the through joint haul is less than the aggregate of the short haul charges, the question arises of how and by what tribunal the division of the through joint haul charge should be made. This is really the question now presented which has been discussed in paragraph 1.

4. As affecting shippers there may be two forms of relief sought. One is to have the lawful charge determined so that unjust exactions may be stopped; the other is reparation for unjust impositions which have been imposed. The commission alone for obvious reasons can supply the first remedy and the right to reparation, as has been stated, is based upon the lawful rate being first thus found. Without this the right does not exist. When it does exist, however, the injured party by the express provisions of section 9 of the Interstate Commerce Act (49 USCA § 9) may elect whether to ask for reparation damages to operate retroactively by the award of the commission or through a judgment of the courts. He cannot have both remedies otherwise than through the appellate provisions of the act. U. S. Code Annotated, title 49, c. 1, § 1 et seq.

The right of the plaintiff to maintain its bill is denied because it is averred that the plaintiff elected to pursue this first remedy and is thereby precluded from a resort to the courts.

The grounds for dismissal which we have discussed as 3 and 4 so far merge with that discussed in No. 1 that they can best be considered together.

5. There is authority for the proposition that laches apparent on the face of the bill is ground of demurrer. There is, however, none such here. Laches, if it exists, is in consequence a defense, not a basis for a motion to dismiss. It is an equitable doctrine. The mere lapse of time during which a bill might have been filed does not argue laches unless there is a statute of limitations, and the exception is on the principle that equity follows the law. Otherwise there must be in laches the element of disadvantage to the defendant making the pressing of the bill inequitable. On the face of this bill the defendant has not been disadvantaged by any delay there may have been in bringing this proceeding. It would, of course, be to its advantage to have the bill dismissed, but its right to a dismissal must be for want of equity in the complaint. This it must show.

6. No applicable statute of limitations has been brought to our attention. Laches and limitation statutes in some respects rest upon the same general principle. It is that of public interest. It is voiced in the familiar adage that the public is concerned with the discouragement of litigation which should not be brought. They operate, however, wholly in different ways. Laches, as we have said, is an equitable doctrine. A complaint which, because of its staleness, it is unjust to the defendant to bring, will be thrown out for want of equity. It thus goes to the cause of action. A statute of limitations, on the other hand, is the command of an autocrat. It belongs to the "thou shall not" class. It is a denial, not of the cause of action, but of the right of action. It is directed against the writ not the merits of the complaint of legal injury. Its operation is determined by the calendar. The courts of law, it is true, have infused into the law of limitations something of the spirit of equity by admitting the doctrine of the tolling of such statutes by waiver and the like, and courts of equity, as we have said, will follow the law of a statute by admitting the defense of laches to a complaint which would be barred at law by the statute. Nevertheless the distinction holds good that a bill will be dismissed because of laches, if in equity and good conscience it should be dismissed, while an action at law will be barred by the statute merely because brought too late. Not only has no statute of limitations been cited to us, but there is authority in Pennsylvania for the doctrine that the bar of a statute is a defense to be pleaded and if not pleaded is waived. Into this, however, we need not go, as we hold that neither of the two grounds last discussed will warrant the dismissal of the bill.

7. This brings us to the criticism that this bill is wanting in necessary parties. We think this objection is well taken. When five persons, as here, have the right to share in a fund, the share of one determines the shares of the others. Hence all have a right to their day in court. The want of parties may not appear on the face of the bill. It may then be suggested in the answer and the plaintiff may set down the cause for argument on this objection. Here the defect appears from the face of the bill, and it has been argued. It may thus be a ground for dismissal. Rules 25, 37, and 43 (28 USCA, following section 723) have application. The cause of the plaintiff is in the hands of competent counsel so that we have no thought of dictating what they should do. No answer has as yet been filed so that the bill may be amended, but if for any reason leave of the court should be required, leave to amend is allowed.

This means that the motion to dismiss is denied on any of the grounds set forth other than Nos. 7, 8, and 9.

No decree is now made, but the parties have leave to submit a formal decree.

The time of the defendant to answer should be extended, and we file herewith a formal extension.