**UNION PACIFIC RAILROAD COMPANY, a Corporation, Plaintiff,**

v.

**George L. HIGGINS and Roy L. Higgins, doing business as Higgins Potato Co., Defendants.**

**Civ. No. 3973.**

United States District Court
D. North Dakota,
Northeastern Division.

Oct. 25, 1963.

Letnes, Hansen & Murray, Grand Forks, N. D., for plaintiff.

Frank J. Kosanda, Grand Forks, N. D., for defendants.

RONALD N. DAVIES, District Judge.

The above-entitled cause came on regularly for hearing upon the plaintiff's motion for summary judgment and the defendants having been given the prescribed 10-day notice provided for by law, and the cause having been thereupon submitted to the court for consideration upon the brief of the plaintiff and the defendants having failed to file a brief in opposition thereto; and the court having duly considered the pleadings, the admissions of the defendants, the affidavits submitted by the plaintiff in support of its motion for summary

judgment, and the deposition of defendant George L. Higgins; and being fully advised in the premises, the court now finds the following:

## FINDINGS OF FACT

1. That the Union Pacific Railroad Company and other carriers hereinafter referred to are common carriers by rail in interstate commerce and that the defendants, George L. Higgins and Roy L. Higgins, at all times referred to in the complaint, did business as Higgins Potato Co. and engaged in the buying, selling and shipping of potatoes.

2. That on or about the 17th day of September, 1959, the Great Northern Railway Company, a common carrier by rail in interstate commerce, under a uniform straight bill of lading, received for transportation by railroad to Minneapolis, Minnesota, subject to classifications and tariffs in effect on that date, at East Grand Forks, Minnesota, from Driscoll Brothers Potato Company, 400 one-hundred pound bags of potatoes, consigned to Higgins Potato Co. at Minneapolis, Minnesota, in car FGEX No. 38603.

3. That said bill of lading provided, among other things, that—

"The owner or consignee shall pay the freight and average, if any, and all other lawful charges. * * * The consignor shall be liable for the freight and all other lawful charges."

4. That before said shipment of potatoes was delivered to the defendants at Minneapolis, Minnesota, by the Great Northern Railway Company, the defendants consigned and diverted said shipment to themselves at Coldspur, Kansas, for storage in transit at Natural Storage Company.

5. That the said car was transported from Minneapolis, Minnesota, to Coldspur, Kansas, via the rail lines of the Minneapolis and St. Louis Railroad Company to Albert Lea, Minnesota, thence via the Illinois Central Railroad Company to Omaha, Nebraska, and thence via the Union Pacific Railroad Company to Coldspur, Kansas, upon the order of the defendants.

6. That said shipment of potatoes was delivered to the Natural Storage Company for the defendants by the plaintiff, Union Pacific Railroad Company, on the 22nd day of September, 1959, and the Natural Storage Company, on behalf of the defendants, paid to the Union Pacific Railroad Company the inbound freight charges therefore in the amount of $315.21, and the potatoes were thereafter kept in storage by the defendants at Coldspur, Kansas, until February 1, 1960.

7. That on February 1, 1960, Union Pacific Railroad Company received from the defendants, through Natural Storage Company, for transportation by railroad to Decatur, Illinois, subject to the classifications and tariffs in effect on that date, at Coldspur, Kansas, the carload shipment of potatoes received by Natural Storage Company, Inc., for Higgins Potato Co. in Car FGEX No. 38603 on September 17, 1959.

8. That Natural Storage Company, Inc., on February 1, 1960, on behalf of Higgins Potato Co. as shipper, requested, pursuant and subject to the classifications and tariffs in effect on the date of the issuance of the outbound bill of lading, an advance of payment of the inbound freight charges in the amount of $315.21 and storage charges in the amount of $244.69 with instruction that all charges were to follow the car.

9. That said shipment was so received by Union Pacific Railroad Company for consignment and shipment to the Licek Potato Chip Company at Decatur, Illinois, in car PFE No. 44232 over the Union Pacific Railroad Company to Kansas City, Missouri, and thence via the Wabash Railroad Company to Decatur, Illinois.

10. That pursuant to Item 280, Part 1, Western Trunk Lines Freight Tariff 214–I, which provides as follows:

"PART 1 (See Note 7)
Upon request, carriers will advance to shippers of freight tendered

for shipment for collection from consignee, accrued charges thereon, as follows:

Cartage (intracity or intraterminal).

Storage.

Freight ⎫ in accordance with
Switching ⎭ tariffs filed with the Interstate Commerce Commission and State Commissions.

Freight charges of dray lines or motor carriers will not be advanced, except as provided above for intracity and intraterminal cartage. (See Notes 1 and 2.)

Charges as specified, desired to be advanced, must be entered on bills of lading and payment thereof guaranteed by shipper.

(1) No portion of inbound charges will be refunded and waybills as advances on shipments of grain and grain products given transit privileges, except will not apply when in conflict with published provisions in tariffs on file with State Commissions for advancing charges in connection with transit arrangements.

(2) No portion of inbound charges will be refunded or waybilled as advances on shipments of grain and grain products given transit privileges, except to the extent authorized in tariffs providing transit privileges on such commodities, on file with the Interstate Commerce Commission or State Commissions.

On shipments of Livestock originating at Canadian points and reforwarded from South St. Paul, Minn., carriers will, upon request, advance the duty and custom house brokerage charges on such shipments, for collection from consignee, provided that the charges to be advanced are entered on bills of lading

and payment thereof guaranteed by the shipper.

Upon request, and satisfactory guarantee of payment at destination, carriers will advance for collection from consignee, charges advanced for feed purchased for carload shipments of Live Poultry while in transit.

Except as provided above, no charges will be advanced to shippers by the carriers parties to this tariff.

Note 7.—The provisions of this item will also apply at points within the territorial scope of this item in connection with all tariffs which provide that shipments moving thereunder are subject to terminal and/or other special services as published in tariffs lawfully on file with the Interstate Commerce Commission or State Commissions.",

the Union Pacific Railroad Company advanced said charges to defendants through the Natural Storage Company, Inc., and the charges as specified, and so advanced, were entered on the outbound bill of lading.

11. That a copy of this bill of lading advising that the Natural Storage Company, Inc., acting as agent for Higgins Potato Co., had requested and was advanced said charges, pursuant to the said tariff provisions, which provide that these charges will be advanced only on the condition that they are guaranteed by the shipper, was immediately forwarded to the Higgins Potato Co. and the plaintiff at no time thereafter was notified by the defendants, or anyone else, that Natural Storage Company, Inc., was not authorized to so act on behalf of the defendants.

12. That the outbound bill of lading contained the same terms regarding liability of the consignee, consignor, and owner, as the inbound bill of lading.

13. That after said carload shipment of potatoes arrived by rail at Decatur,

Illinois, it was refused by the Licek Potato Chip Company and the defendants, through their agent, Frank Kenworthy, reconsigned and shipped said carload of potatoes to St. Louis, Missouri, over the Wabash Railroad Company, pursuant to the classifications and tariffs then in effect.

14. That delivery of the potatoes at St. Louis, Missouri, was refused under the claim that said potatoes were worthless, and the said potatoes were then abandoned to the carrier and dumped.

15. That, in addition to the charges advanced by the Union Pacific Railroad Company to the defendants at Coldspur, Kansas, freight charges in the amount of $68.81 accrued for transportation of said shipment from Coldspur, Kansas, to St. Louis, Missouri, thus making the correct total charges due plaintiff on this shipment $628.71.

16. That at all times referred to in plaintiff's complaint the following tariff was in effect and had been duly filed and published; Western Trunk Lines' Freight Tariff W–25–K, I.C.C. A–4204, Item 230:

"When fruits and vegetables, in carloads, shipped from point of origin in good condition become deteriorated in transit and are unclaimed or refused at destinations by the consignee or by the party notified in case of 'order-notify' shipments, they may be sold by the destination line-haul carrier for account of whom it may concern (subject to Exceptions 1, 2 and 3) and if the amount realized from such sale is less than the amount of outstanding freight and other lawful charges under the carriers tariffs, the amount realized from such sale, less the selling cost, shall be considered as the full amount of the freight and other lawful charges outstanding thereon, and shall be apportioned among the lines participating in the haul of the shipment in proportion to earnings accruing to such lines under lawfully published tariffs

from point of origin to final destination. Terminal and accessorial charges, except protective service charges, shall be included in revenue of the carrier or carriers performing such service, and where protective service charges are included the accrued charges for such service shall be first deducted and allocated to the lines against which such charges were assessed.

"Exception 1.—If, at such sale, the shipment is sold to the consignor or to the original or ultimate consignee, or to anyone representing the consignor or the original or ultimate consignee, the freight and other charges that accrued under lawfully applicable tariffs shall be assessed and collected.

"Exception 2.—In the event deterioration of the shipment resulted from the negligence of one or more carriers that handled the shipment, this rule shall not be construed as relieving such negligent carrier or carriers of liability under the appropriate freight claim rules with respect to either freight, accessorial, or other charges that accrued under lawfully published tariffs or of responsibility for any claim of owner for loss or damage to the shipment.

"Exception 3.—This rule will not apply on shipments of perishables on which guarantee of transportation charges has been given or prepayment made."

17. That the lawful tariff rates which are on file with the Interstate Commerce Commission for the aforesaid transportation, storage in transit and delivery and abandonment of the carload shipment of potatoes referred to in plaintiff's complaint, are set forth in Item 850–E of Western Trunk Line Tariff 297–B, Supplement 161 and Supplement 91, Rate Basis 163; Item 520 of Union Pacific Tariff 154–I; and Item 23814 of National Perishable Freight Committee Perishable Protective Tariff 18; and that said tariffs have been duly filed and

lawfully published and were at all times referred to herein in full force and effect.

18. That there is therefore no dispute regarding the transportation and storage in transit or the amount of the freight charges and storage charges that accrued as a result thereof.

19. That the only issue in dispute is whether or not the defendants can escape liability for payment of the said charges under the above tariff provisions.

### CONCLUSIONS OF LAW

From the foregoing facts the court concludes:

1. That the above-entitled civil action arises under a law regulating commerce, and the court pursuant to Section 1337 U.S.C.A. Title 28 does therefore have jurisdiction over the parties herein involved.

2. That the defendants by exercising dominion over the shipment of potatoes by diverting and thereby causing said shipment of potatoes to be transported by railroad in interstate commerce from Minneapolis, Minnesota, to Coldspur, Kansas, for storage in transit and thence to Decatur, Illinois and St. Louis, Missouri, became a party to the contract (uniform bill of lading) between the original consignor and the carriers, and is therefore obligated under the laws of the United States to pay all lawful charges that accrued on said shipment.

3. The terms of a contract under which a carrier transports goods in interstate commerce include both the bill of lading and the published tariffs, and the provisions of said bill of lading and the published tariffs cannot be waived.

4. That a carrier cannot waive or be estopped from collecting full charges prescribed by published tariffs.

5. That whether or not there was an execution of the non-recourse clause of the uniform bill of lading is immaterial to a determination of the merits of this case since it is undisputed that delivery of the shipment was refused by the consignee.

6. It is undisputed that Natural Storage Company, as agent of the defendants, requested and accepted on behalf of the defendants, advance of the inbound freight charges and storage charges then accrued and the charges so advanced were entered on the outbound bill of lading and a copy of this bill of lading was sent to and received by the defendants.

Item 280 Tariff 214, which under the law is a part of the contract between the defendants and the plaintiff provided "charges as specified, desired to be advanced, must be entered on bills of lading and payment thereof guaranteed by shipper." Since under the law a tariff is in essence a statement by the carrier to possible shippers that it will furnish certain services under certain conditions for a certain price and once it has become legally promulgated, it is binding upon both the carrier and any shipper taking advantage of it, and its terms (in essence) become in such respects, the only contract between the two allowed by law, a person who claims and accepts the benefits of a tariff therefore is bound also by its limitations and reciprocal obligations and the defendants, therefore, by claiming and accepting the advanced charges did thereby guarantee payment of the charges.

7. Therefore, the only conditions under which the defendants' obligation to pay all charges due could be changed are those set forth in the *Deficit Rule*, Item 330 Tariff W 24 K. However, the last paragraph of the deficit rule which is entitled Exception 3 specifically provides:

> "This rule will not apply on shipments of perishables on which guarantee of transportation charges has been given or prepayment made."

The *Deficit Rule* therefore is not applicable in this case where the charges have been guaranteed under the provisions of the tariff by the shipper. The plaintiff, therefore, is not permitted nor

**402**

can it be required to waive the collection of these charges and the plaintiff is neither privileged nor obligated to waive the collection of these charges.

8. That true and correct charges for the transportation of said shipment from East Grand Forks, Minnesota, to St. Louis, Missouri, via Coldspur, Kansas, and Decatur, Illinois, under the lawfully promulgated tariffs then in effect is $384.02 and the true and correct amount of the storage charges that plaintiff lawfully advanced pursuant to Item 280, Part I, Western Trunk Lines Freight Tariff 214–I, is $244.69, and the defendants are therefore indebted to the plaintiff in the amount of $628.71 and said sum is now due and owing, and that the plaintiff is entitled to judgment against the defendants in said amount together with interest at the rate provided by law and the costs of this civil action.

Let judgment be entered accordingly.