**SEABOARD COAST LINE RAILROAD COMPANY, Plaintiff,**

v.

**LONG ISLAND RAIL ROAD COMPANY, Defendant.**

No. 76 C 292.

United States District Court,
E. D. New York.

Jan. 10, 1978.

Memorandum on Reargument
April 10, 1978.

Whitman & Ransom by Donald L. Wallace, New York City, and Albert B. Russ, Jr., Richmond, Va., for plaintiff.

George M. Onken, Jamaica, N. Y. by Richard H. Stokes, Jamaica, N. Y., for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

This case involves a controversy over interline accounts between the parties dating back to 1953 arising from defendant railroad's use of plaintiff railroad's freight

cars.[1] Defendant, believing it had overpaid plaintiff for the use of the latter's freight cars during the period 1953–1965, set off $184,664 against per diem freight car charges due plaintiff for the period 1970–1975. In 1976 plaintiff brought this action to recover the alleged unpaid balance of per diem charges for the 1970–1975 period and defendant counterclaimed for the overpayments it claimed it had made to plaintiff during 1953–1965. The matter is before the court on cross-motions for summary judgment based on an agreed statement of facts.

## I.

For decades defendant, which owns no freight cars, has used plaintiff's freight cars and has paid per diem rental charges. Prior to 1969, the per diem rates were fixed by the Association of American Railroads ("AAR") pursuant to an agreement to which its members, including the parties to this action, subscribed. Each subscriber, however, retained the right to establish different rates by contractual agreements with individual railroads.

In 1953 some railroads, including defendant, decided to negotiate rates on a road-by-road basis. The railroads on the other end of the negotiations, among them plaintiff, promptly filed a complaint with the Interstate Commerce Commission ("ICC") to determine the reasonableness of the AAR rates.[2] In 1955 the ICC determined that the AAR rates were just and reasonable. *Chicago, Burlington & Quincy R. Co. v. New York, Susquehanna & Western R. Co.,* 297 I.C.C. 291 (1955).

---

**1.** For convenience, "plaintiff" refers both to Seaboard Coast Line Railroad Company and to its predecessors. The court has jurisdiction on diversity grounds since plaintiff is a Virginia corporation and defendant a New York corporation, and the requisite amount is involved.

**2.** Plaintiff also was one of many per diem creditor railroads which filed 109 lawsuits in the Southern District of New York against two per diem debtor railroads, The New York, New Haven and Hartford Railroad Company and Boston & Maine Railroad, which were paying less than the AAR rates. These actions, following consolidation, were resolved in the plaintiffs' favor in *Baltimore & Ohio R. Co. v.*

---

In 1957, while the appeal from the ICC order was pending in the United States District Court in Massachusetts, the parties to this action entered into an interim agreement pursuant to which defendant agreed to pay the higher AAR rates under appeal upon the following understanding:

"That [Seaboard Coast Line Railroad Company] will reimburse [Long Island Rail Road Company] without interest for any overpayment if a lower rate is eventually so agreed upon or is determined by the courts to be reasonable in or on appeal from a decision in the foregoing litigation [*i. e.,* the appeal in the District of Massachusetts] or in any other action or proceeding, or is so found by the Interstate Commerce Commission with the approval of the courts." Appendix C, Agreed Statement of Facts at App. 12.

In 1958 a three-judge court in the District of Massachusetts reversed the ICC's order and remanded the case to the ICC to consider the reasonableness of the AAR's per diem rates in the light of a detailed investigation of a "time-mileage plan," an alternative method of computing car hire rates.[3] *Boston & Maine Railroad v. United States,* 162 F.Supp. 289 (D.Mass.1958). An appeal of this decision to the Supreme Court was dismissed as premature on the ground that the ICC had expressed its willingness to make more detailed findings in accordance with the terms of the district court's remand. *Boston & Maine Railroad v. United States,* 358 U.S. 68, 79 S.Ct. 107, 3 L.Ed.2d 34 (1958).

---

*New York, New Haven & Hartford R. Co.,* 196 F.Supp. 724 (S.D.N.Y.1961), but judgment was deferred pending the ICC's determination as to a reasonable rate of compensation for the use of the freight cars. As stated within, the ICC made such a determination in *Chicago, Burlington & Quincy R. Co. v. New York, Susquehanna & Western R. Co.,* 332 I.C.C. 176 (1968).

**3.** Whereas the AAR rates took account only of the amount of time a freight car is used, the time-mileage plan includes both the costs attributable to mileage use and the costs attributable to the passage of time.

Ten years later, after extensive hearings, the ICC concluded that the AAR rates were not just and reasonable and that the time-mileage plan provided more equitable rates. *Chicago, Burlington & Quincy R. Co. v. New York, Susquehanna & Western R. Co.*, 332 I.C.C. 176 (1968). Since mileage figures were not available for the years 1953–1965, however, the ICC fixed what it considered reasonable per diem rates for that period.[4] A three-judge court affirmed this determination in *Boston & Maine Railroad v. United States*, 297 F.Supp. 615 (D.Mass.1969), as did the Supreme Court in *Boston & Maine Railroad v. United States*, 396 U.S. 27, 90 S.Ct. 196, 24 L.Ed.2d 142 (1970).

Following the Supreme Court's affirmance, which was announced on November 10, 1969, defendant's president sent plaintiff a letter on April 23, 1970 in which he noted that, pursuant to their 1957 interim agreement, the time had come for an adjustment of the per diem accounts for the period of 1953–1965. The letter continued:

> "A review of our books of account reveal that our company paid your company during the period August 1953 through December 1965 per diem rates in excess of those found reasonable by the Commission. For your review, I am attaching herewith a statement of the excess per diem charges which we claim we are entitled to have refunded to us."

Plaintiff's president gave the following brief response on May 21, 1970:

> "I have had an opportunity to review the figures on your statement of charges and find they do not agree with our records. Therefore, I suggest that a meeting of our accounting representatives be arranged to iron out the differences."

When defendant requested a list of the items in question, plaintiff indicated in a letter dated October 2, 1970 that it considered most of defendant's claims for the 1953–1965 period were time-barred but was willing to settle the parties' differences over that period for $35,000, and to apply to the 1966–1970 period the basis used in defendant's April 23, 1970 letter in calculating amounts due for the earlier period.

Defendant did not accept the proposal. Instead, beginning in November 1970 and continuing through October 1975, defendant periodically underpaid car hire charges owed to plaintiff. On February 13, 1976 plaintiff filed the present action to recover the amounts set off, which totaled $184,664.44. On August 13, 1976 defendant answered the complaint and filed a counterclaim for the excess per diem it claims was owed to it by plaintiff for the 1953–1965 period. The parties have agreed that the correct amount of those payments is $132,500.65.

## II.

This case is remarkable because although the court's jurisdiction is invoked on diversity grounds, each party seeks to defend against the other's claim by relying on a three-year statute of limitations found in the Interstate Commerce Act as amended. The pertinent provision reads as follows:

> "All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after." 49 U.S.C. § 16(3)(a).[5]

Presumably in an effort to avoid this federal statute of limitations and to come within a longer State limitations period, plaintiff alleged only common law claims as alternative grounds for defendant's liability: (1) plaintiff is entitled to restitution for

---

4. In the same order the ICC provided that car use rates in the future were to be calculated in accordance with the time-mileage plan. This aspect of the order was affirmed by a three-judge district court in *Union Pacific R. Co. v. United States*, 300 F.Supp. 318 (D.Neb.1969), and by the Supreme Court in *Boston & Maine Railroad v. United States*, 396 U.S. 27, 90 S.Ct. 196, 24 L.Ed.2d 142 (1970).

5. Although defendant did not plead the federal statute of limitations in its answer, it did not waive it because this provision is jurisdictional if it applied. See *Midstate Horticultural Co. v. Pennsylvania R. Co.*, 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96 (1943).

the value of defendant's use of plaintiff's cars; (2) defendant promised to pay the value of its use of the cars; and (3) defendant is liable on an account stated. Although defendant in its answer denied each of these claims and allegations, it does not dispute that it underpaid plaintiff $184,-664.44 for the use of plaintiff's cars during 1970–1975. Aside from its counterclaim, defendant contends that § 16(3)(a) *supra* stands as a bar to plaintiff's recovery of any unpaid per diem charges which were due prior to February 13, 1973, three years before the filing of the complaint. As hereinafter discussed, the court is of opinion that in a suit such as this between carriers, § 16(3) has no application.

In attacking defendant's counterclaim, plaintiff argues that federal law precludes the recognition of any right of set-off. Reliance is placed on cases cited in the margin,[6] three of which on examination deal with the special problems of railroads in reorganization and are inapplicable here. The argument is rejected, since the real question is whether defendant's counterclaim is barred by the limitation of § 16(3) *supra* or any other period of limitations.

The court concludes that the parties and the nature of their controversy are such as to place the claims involved beyond the scope of § 16(3). As is plain from the Agreed Statement of Facts, including Appendices A and B, and as plaintiff itself acknowledges (Brief, p. 5), what is involved here is a dispute over the settlement of interline accounts solely between carriers relating to past per diem charges which appear to be the subject of a valid agreement. There is no question of condoning the assertion of stale claims that would upset the policy "of uniformity and equality of treatment, as between carrier and ship-

per," which § 16(3) was designed to promote. *Midstate Horticultural Co., Inc. v. Pennsylvania Railroad Co.,* 320 U.S. 356, 361, 64 S.Ct. 128, 131, 88 L.Ed. 96 (1943).

Although plaintiff cites a number of unreported district court cases[7] for the proposition that recovery of overpayments between carriers has been held to be subject to the three-year limitation of § 16(3), the facts of those cases are not revealed nor is any reason indicated why such a result was reached. On the contrary, there is authority pointing to an opposite result where, as here, the subject matter is a dispute over payments as between carriers.

In *Thompson v. St. Louis-San Francisco Railway Company,* 218 F.2d 166 (8 Cir. 1954), *cert. denied,* 348 U.S. 964, 75 S.Ct. 525, 99 L.Ed. 752 (1955), one Missouri railroad sued another Missouri railroad over a claimed improper division of revenue earned for transporting tank cars of crude petroleum interstate. The transportation took place during the period 1944–1945; the formal demand by the plaintiff for payment was made within the then two-year limitation in § 16(3)(a) for bringing suit; but the action was not commenced until 1952—almost five years after the limitation had expired. Nonetheless, in the Court of Appeals, even Judge Sanborn, dissenting for other reasons, joined the majority in holding that the claim "was not barred or extinguished by limitations." 218 F.2d at 172, 174. Especially noteworthy was the Supreme Court's later denial of certiorari in *Thompson,* despite the Eighth Circuit's rejection of the defendant's contention that under the Supreme Court's earlier ruling in *Midstate, supra,* "the lapse of time before commencement of the action 'destroyed the liability'," 218 F.2d at 172.

---

6. *In re The Central Railroad of New Jersey,* 273 F.Supp. 282 (D.N.J.1967); *In re Penn Central Transportation Company,* 340 F.Supp. 857 (E.D.Pa.1972), aff'd, 486 F.2d 519 (3 Cir. 1973); *Matter of Chicago, Rock Island and Pacific R. Co.,* 537 F.2d 906 (7 Cir. 1976). *Boston and Maine Corp. v. Illinois Central Railroad Co.,* 274 F.Supp. 257 (S.D.N.Y.1967), also cited by plaintiff, is equally inapposite, for it dealt solely with the finality of an arbitration award.

7. *N. Y. S. and W. v. Seaboard Coast Line Railroad Company* (D.N.J.1974); *New York Susquehanna and Western Railroad v. Canadian Pacific Ltd.* (D.N.J.1974); and *Burlington Northern, Inc., et al. v. New York, Susquehanna and Western Railroad Company* (D.N.J. 1974), aff'd, 523 F.2d 1050 (3 Cir. 1975).

The Court of Appeals in *Thompson, supra*, based its decision on an early ruling of Judge Chesnut in *Atlantic Coast Line R. Co. v. Baltimore & Ohio R. Co.*, 12 F.Supp. 711 (D.Md.1935), that § 16(3) seems "to contemplate actions or complaints between carriers and shippers, and not between carriers only." But the court was also influenced by the railroads' acceptance of the ruling since 1935 "without any protest that we know of by the Interstate Commerce Commission which is primarily charged with the railroad regulation involved . . . ." 218 F.2d at 172. Bearing in mind that "a literal interpretation of the words of a statute is not always a safe guide to its meaning," *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2 Cir. 1960), the court finds the reasoning of *Thompson* persuasive and holds that § 16(3) does not bar a resolution of this dispute upon the merits as to the claims of either party.

In this case there is added reason for not applying the § 16(3) limitation. As previously noted, this is not really a suit (or counterclaim) seeking the payment of per diem charges or overcharges *per se*. The agreed statement of facts discloses that in 1957 the parties (along with other railroads) were deep in litigation over the question of proper per diem rates for freight cars, litigation not likely to be settled for years to come. Defendant, recognizing its debtor status and unwilling to "be the stakeholder of the moneys involved" (App. 11), proposed to plaintiff that "pending final determination of a reasonable rate" (*id.*), it would continue to pay plaintiff the contested rates in the interim, provided "you will reimburse this company without interest for any overpayment if a lower rate . . . is so found by the Interstate Commerce Commission with the approval of the courts." Plaintiff accepted the proposal and it became a binding agreement despite the contingent nature of plaintiff's obligation. App. 14.

Plaintiff's obligation under the 1957 agreement did not even arise until the Supreme Court's decision was rendered on November 10, 1969. Not until that date could it be said with finality that "a lower rate [was] . . . found [to be reasonable] by the Interstate Commerce Commission with the approval of the courts." Hence plaintiff's first contention, that all claims of defendant based on 1953–1965 rental overpayments were already extinguished by virtue of the § 16(3) limitation, *supra*, would render the 1957 agreement a futility and thus cannot be · accepted as a reasonable view of its purpose and effect.

The parties' purpose in making the agreement was clearly to avoid the expense of further litigation, not to multiply it. Its effect was to postpone the final settlement of the parties' interline accounts until the question of reasonable car rental charges was finally determined. The cause of action embraced in defendant's counterclaim is not to recover overpayments as such but to obtain credit by way of set-off for the "reimbursement" plaintiff failed to make as required by the agreement. As such, it is a common law right of action for breach of a contract not claimed to violate any prohibition of the Interstate Commerce Act but only to be barred from enforcement by the limitation of § 16(3).

The federal statute having been found inapplicable, the next question is whether the six-year statute of limitations applicable to contract claims in New York, N.Y. CPLR § 213(2), would in any event bar enforcement, as plaintiff also contends. Applying the New York statute presents less difficulty. Under N.Y. CPLR § 203(c), the statute of limitations on a counterclaim is tolled as of the date the action is commenced. Since plaintiff's action was filed on February 13, 1976, the relevant six-year period reaches back to February 13, 1970, not August 13, 1970 as plaintiff claims. If the claim set forth in the counterclaim accrued during that period, then it is timely.

The final question, therefore, is when the cause of action asserted in defendant's counterclaim accrued. The 1957 agreement understandably specifies no date for reimbursement of per diem charges since that obligation was entirely contin-

gent upon the outcome of the then pending litigation including interim ICC proceedings. As already noted, the final outcome came with the Supreme Court's decision on November 10, 1969. That date was certainly the earliest time when plaintiff's *obligation* to reimburse defendant arose. The creation of an obligation and the accrual of a cause of action for its breach are not one and the same and usually are separated in point of time. The ordinary rule, when the time of performance is not specified in a contract, is that it shall occur within a reasonable time. *City of New York v. N. Y. Central R. Co.*, 275 N.Y. 287, 9 N.E.2d 931 (1937).

 From the correspondence between the parties which followed the Supreme Court's decision, it is quite clear that although the decision settled the matter of plaintiff's obligation, it did not determine the amount of reimbursement due defendant. That obviously remained for settlement between the parties. See Appendices D, E and F, App. 15–18. It is equally clear that the question of amount of reimbursement was under consideration between them until plaintiff made its final—and unsatisfactory—offer on October 2, 1970. Appendix G, App. 19. The earliest date of accrual of defendant's claim for breach of the reimbursement agreement was therefore October 2, 1970—well within the six-year period of limitations.

Accordingly, plaintiff's claim is allowed in the sum of $184,664.44 (Appendix A, App. 9) and defendant's counterclaim is allowed as a set-off to the extent of $132,500.65 (Appendix B, App. 10). The Clerk is directed to enter summary judgment in favor of plaintiff for the difference, namely, $52,163.79 with interest at the rate of 4% from February 13, 1976, each party to bear its own costs.

SO ORDERED.

## MEMORANDUM ON REARGUMENT

On consent of the defendant, the court granted plaintiff's application for reargu-
ment and vacated its summary judgment so as to avoid the need for perfecting a prompt appeal. That seemed the appropriate course in view of plaintiff's contention that pertinent decisions not considered by the court rendered its judgment erroneous as a matter of law.

On reargument plaintiff renewed its primary contention that the three-year statute of limitations, 49 U.S.C. § 16(3)(a), quoted in Part II, *supra*, alone governs the controversy between these two railroad carriers and it was error to apply the New York six-year statute, CPLR § 213, to their respective claims. If plaintiff is correct, defendant's counterclaim for set-off would be wholly barred and plaintiff's judgment would have to be increased.

With remarkable ambivalence, plaintiff also urges that it should recover $184,664.44, representing *six* years of per diem car rental charges allegedly unpaid by defendant prior to the commencement of this action in 1976. That theory of unilateral escape from the bar of the three-year statute, plaintiff argues, applies to plaintiff's claim because the charges in question were ICC-prescribed rates which plaintiff was bound to collect. See n.4 *supra*.

There is no question that 49 U.S.C. § 15 gives the ICC authority to "prescribe" rates and mandates that carriers shall not "demand or collect" different rates. But it is fallacious to suggest that uncollected "charges," even though prescribed, may be sued for after the three-year limitation period has expired. The very authorities plaintiff now urges on the court reveal that the statute begins to run from the time the obligation to pay the prescribed rate or charge arose. The court did not overlook plaintiff's contention on prior consideration. Plaintiff was allowed full recovery (less defendant's set-off) because the court was of opinion that § 16(3) had no application to this controversy between carriers over their inter-line accounts.[8] Moreover, it considered plaintiff's contention that the ICC's

---

**8.** Had the court ruled otherwise with respect to the uncollected "prescribed" charges over three years old, plaintiff's judgment would have been decreased to $28,928.61.

legislative function overrode § 16(3) (assuming it applied) was patently unsound, and it is still of that opinion.

Turning now to the mooted point—whether § 16(3) is applicable to this controversy—plaintiff relies on the triad of unreported New Jersey District Court decisions referred to in n.7, *supra*, and on a very recent ICC decision which holds that § 16(3)(b) applies to claims between carriers as well as those between carriers and shippers. ICC Docket No. 35940, *In the Matter of Investigation into Lawfulness of Interchange Arrangements Between The Bangor and Aroostook Railroad and CP Rail At Brownville Junction, Maine*, decided on February 4, 1977.

Although plaintiff cited the unreported New Jersey cases in its original briefs, it did not make copies available to the court until this reargument. All were suits between carriers involving claims for either payment or refund of per diem rental charges growing out of the same protracted litigation described in the court's original decision, Part I, *supra*. In two of the three cases Judge Whipple held that § 16(3)(a) barred recovery on all claims for refund of unreasonable per diem rental overcharges paid more than three years before suit was commenced. In the third case, he made the same ruling with respect to undercharges, and also held that § 16(3) was not limited to suits between carriers and shippers, finding support for his views in Judge Johnson's comment in *Thompson v. St. Louis-San Francisco Railway Company, Part II, supra*, quoted in the margin,[9] although acknowledging that the latter concurred in the re-

sult. In declining to follow the *Thompson* rule, Judge Whipple distinguished a suit for recovery of disputed transportation revenues from cases like those before him (and this case) where "*per diem* charges" were involved. It is clear that the rationale for his decision in all three cases was his view that

"recovery of unreasonable rate overcharges is a matter governed by the [Transportation] Act [49 U.S.C. § 1, *et seq.*] and for this reason any suit seeking recovery of rate overcharges should be regulated by the three year period of limitations discovered in the Act. Congress has decided under its pre-emptive power to exclusively regulate interstate commerce and thus this period of limitations 'not only bars the remedy, but destroys the liability,'" citing *A. J. Phillips Co. v. Grand Trunk, W. R. Co.*, 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774 (1915).[10]

Contrary to Judge Whipple's view, the per diem charges constituting the defendant's set-off counterclaim were *not* regulated by the Act or the ICC, as even plaintiff acknowledged in its original brief. Such charges for freight car rental were entirely matters of private agreement between carriers. Moreover, the parties here by their bilateral agreement fulfilled a condition for the tolling of the three-year statute (if applicable), which Judge Whipple would have allowed; viz., that defendant "place [plaintiff] on formal notice that it would seek such a refund." See *New York Susquehanna and Western Railroad Company, etc. v. Seaboard Coast Line Railroad Company, etc.* (D.N.J.1974), Civil No. 1998–72, Opinion at 8. And see also his decision, n.10 *supra*,

**9.** "The only portion of the opinion that has bothered me somewhat is the construction made of 49 U.S.C.A. Sec. 16(3)(a) and (e), through the adoption of Judge Chesnut's language in *Atlantic Coast Line R.R. Co. v. Baltimore & O. R. Co.*, D.C.Md. (1935), 12 F.Supp. 711, 718, that 'These provisions seem to contemplate actions or complaints between carriers and shippers, and not between carriers only.' I can see no reason on the statute to believe that, when Congress deemed it advisable, in the interest of uniformity and certainty, to impose a limitation on 'All actions at law by carriers . . .

for recovery of their charges, or any part thereof', it was in any way concerned about or intending to have regard for any theories, forms, technicalities and distinctions in common law actions or recoveries. I think it was fixing a time, as a general transportation-code policy, within which a carrier had to act or recover its transportation charges or revenues against anyone who owed it the duty of making payment thereof as such."

**10.** *New York Susquehanna and Western Railroad v. Canadian Pacific Ltd.* (D.N.J.1974), Civil No. 648–72, Opinion at 4.

where he said: "Because of this lack of formal notice to [Seaboard] in the instant case, I conclude that the ICC action Docket 31358 did not toll the running of the three year statute of limitations . . . ." Civil No. 648–72, Opinion at 6. Plaintiff here cannot claim any lack of notice and it would have been wholly unreasonable to cut off rights in protracted litigation between carriers—so customary in the railroad industry—by applying a statute of limitation before it was even possible to determine whether causes of action existed. This court does not read the New Jersey decisions as dictating such a result in this case, but if they do, it declines to follow them.

The 1977 ICC decision, *supra*, at first blush, seems to present a more formidable obstacle to the allowance of defendant's counterclaim for set-off. Viewing *Thompson v. St. Louis-San Francisco Ry., supra*, as "improperly decided," the ICC found "no indication whatsoever that the amended language in section 16 of the Act was narrowly meant to apply to actions between shippers and carriers only." ICC Docket No. 35940, *supra*, at 38. Although the extensive legislative history reviewed by the ICC hardly illumines with any clarity the purpose and meaning of § 16 as now construed by the ICC, there is much support for the view that the interpretation of a statute by the agency charged with its administration is entitled to great weight, if it is reasonable. See Davis, Administrative Law Treatise § 5.06 at 164. Certainly this court would not be inclined to disagree with the ICC's view that "uniform adjudication of damage claims brought before *this Commission* in actions between carriers necessitates that a federal statute of limitations govern such causes of action which arise under the ·Act." ICC Docket No. 35940, *supra*, at 42.

■ In this case, however, the claims involved are not before the ICC, do not arise out of matters which had been regulated by the ICC, and occurred during an extended period when the ICC had chosen not to interfere with the long-standing practice it has now decided to overturn. To apply retroactively the ICC's new interpretation of § 16(3) to this case would be unreasonable and would serve no apparent regulatory purpose. On the contrary, it would allow plaintiff, the party which reneged on a contract, to recover a windfall as a reward for its own default in failing to make the agreed refund to defendant. To avoid such an unjust result, the ICC's new interpretation of § 16(3) will be limited to prospective operation and will thus not bar the entry of a new judgment as before. See Davis, *supra*, § 5.09.

Accordingly, plaintiff's claim is allowed in the sum of $184,644.44 (Appendix A, App. 9) and defendant's counterclaim is allowed as a set-off to the extent of $132,-500.65 (Appendix B, App. 10). The Clerk is directed to enter summary judgment in favor of plaintiff for the difference, namely, $52,163.79 with interest at the rate of 4% from February 13, 1976, each party to bear its own costs.

SO ORDERED.