**SEABOARD COAST LINE RAILROAD COMPANY, Plaintiff-Appellant,**

v.

**LONG ISLAND RAIL ROAD COMPANY, Defendant-Appellee.**

**Nos. 169, 170, 171, 172 and 173, Docket Nos. 78–7224, 7225, 7240, 7350 and 7351.**

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1978.

Decided March 13, 1979.

Albert B. Russ, Jr., Richmond, Va. (Whitman & Ransom, New York City, on the brief, Donald L. Wallace, New York City, of counsel), for plaintiff-appellant.

Richard H. Stokes, Jamaica, N.Y. (George M. Onken, Jamaica, N.Y., on the brief, Armand J. Prisco, Jamaica, of counsel), for defendant-appellee.

Before OAKES, VAN GRAAFEILAND, Circuit Judges, and MISHLER,* District Judge.

VAN GRAAFEILAND, Circuit Judge:

These are appeals from orders of the United States District Court for the Eastern District of New York directing an award of $52,163.79 in favor of plaintiff-appellant, and from the judgment entered pursuant to the orders. The issues, which were submitted on an agreed statement of facts,[1] involved Seaboard Coast Line Railroad Company's charges for the use of its freight cars by the Long Island Rail Road Company, a matter in dispute since 1953. In that year, several eastern railroads refused to go along with a voluntary increase in car-usage rates proposed by the Association of American Railroads, and proceedings were instituted before the Interstate Commerce Commission seeking a declaration that the increased rates were just and reasonable.

Because the Commission proceedings were protracted,[2] the unpaid creditor railroads felt it necessary to preserve their rights against the recalcitrant carriers, and over 100 lawsuits seeking recovery of the increased charges were commenced. The Long Island Rail Road, which was among those opposing the increase in charges, attempted to avoid litigation by paying the higher rates under agreements providing for reimbursement if the Commission eventually determined, with court approval, that lower rates were reasonable. Its agreement with Seaboard, made in September 1957, is the focal point of this litigation.

Although the Commission has long had authority under 49 U.S.C. § 1(14)(a) to establish rules respecting car service and compensation for the use of cars owned by other railroads, the railroads that turned to the Commission in 1953 did not seek relief under that section. Instead, they requested a declaration from the Commission that the increased rates were just and reasonable. In the lawsuits, most of which were consolidated in the Eastern District of New York, partial judgment was entered for the plaintiffs, ultimate recovery to be in such amounts as the court found to be due based upon a rate to be found just, fair, reasonable, and nondiscriminatory by the Interstate Commerce Commission, of which said Commission shall advise this court and thereafter to be ultimately determined and fixed by this court for each month beginning with August 1953 to date to be computed with interest.

---

* Honorable Jacob Mishler, Chief Judge, Eastern District of New York, United States District Court, sitting by designation.

1. See the district court's memorandum decisions, reported at 447 F.Supp. 108, 114 (ED.N.Y.1978).

2. For the historical highlights, see *Boston & Maine R.R. v. United States*, 162 F.Supp. 289 (D.Mass.1958), *appeal dismissed*, 358 U.S. 68, 79 S.Ct. 107, 3 L.Ed.2d 34 (1958); *Boston & Maine R.R. v. United States*, 297 F.Supp. 615 (D.Mass.) *aff'd*, 396 U.S. 27, 90 S.Ct. 196, 24 L.Ed.2d 142 (1969); *Union Pacific R.R. v. United States*, 300 F.Supp. 318 (D.Neb.) *aff'd*, 396 U.S. 27, 90 S.Ct. 196, 24 L.Ed.2d 142 (1969).

*Chicago, Burlington & Quincy R.R. v. New York, Susquehanna & Western R.R.,* 322 I.C.C. 176, 181 (1968).

■ The Commission felt that the court was asking it for advice, *id.* at 244, and for findings concerning reasonableness that might be considered by the court in assessing damages. *Id.* at 255. However, although the Commission considered that its findings would be "of significance only as an aid to the courts in settling the amount of damages in the pending lawsuits," *id.* at 183, the findings themselves were not so limited in their scope. As stated in the Commission's decision, the issues were "whether the rates charged at various times over the past decade and a half by car-owning railroads for the use of their cars by other railroads were just, reasonable, and compensatory as provided in sections 1(10), 1(11), and 1(14)(a) of the act; and if not, what rates would meet the standard for that period . . . ." *Id.* The figures upon which the Commission's findings were based were not simply those of the litigating railroads but of the entire industry. *See, e. g.,* Rail Form H., *id.* at 276–79. There is no merit, therefore, in Seaboard's contention that, because Long Island was not a party to the litigation, the Commission's findings for the years prior to 1968 were not the findings contemplated by the 1957 agreement. The district court did not err in computing Long Island's right to reimbursement on the basis of the Commission's figures.

In so holding, we do not lose sight of the fact that Long Island's right to reimbursement was based upon its contract with Seaboard, not upon the decision of the Commission. In the original proceeding brought before it, the Commission was not asked to prescribe rates under section 1(14)(a) and very carefully refrained from so doing.[3] We find this significant when we are asked to determine whether Long Island's right to reimbursement is governed by New York's six-year contract statute of limitations.

CPLR § 213(2), or by one of the limitation periods in 49 U.S.C. § 16(3).

Following the Supreme Court's affirmance of the Commission's holding, *see Boston & Maine R.R. v. United States,* 396 U.S. 27, 90 S.Ct. 196, 24 L.Ed.2d 142 (1969), Seaboard rejected a substantial portion of Long Island's request for reimbursement on the ground that the statute of limitations had run against that portion of Long Island's claim. Long Island then undertook a program of self-help by underpaying Seaboard's subsequent car-usage charges until 1976, when Seaboard commenced this action to recover the amount withheld. Long Island counterclaimed for the entire amount of the contractually mandated reimbursement, contending that its cause of action accrued in 1970 when Seaboard refused to return the excess payments as it had agreed to do. The judgment in Seaboard's favor represents deductions made by Long Island over and above the amount of reimbursement to which it was entitled under its contract. In allowing the full amount of Long Island's counterclaim the district court correctly applied the six-year New York statute of limitations rather than one of the shorter periods provided for in 49 U.S.C. § 16(3).

■ Section 16(3)(a) prescribes a three-year period of limitation in actions by carriers "for recovery of their charges, or any part thereof." Long Island sought no such relief in its counterclaim. Section 16(3)(c) prescribes a three-year limitation period in an action for recovery of overcharges. Overcharges are defined in section 16(3)(g) as "charges for transportation services in excess of those applicable thereto under the tariffs lawfully on file with the commission." *See Humble Oil & Refining Co. v. Great Northern Railway Co.,* 212 F.Supp. 747, 756 (D.Mont.1962). Long Island was not seeking recovery of charges made in excess of lawfully filed tariffs, tariffs being statements made by carriers to shippers that they will furnish certain services at

---

**3.** In a separately instituted proceeding in which all carriers were made parties, the Commission, acting under § 1(14)(a), did prescribe procedures for determining future rates. 332 I.C.C. at 258–59.

certain prices. *Union Pacific R.R. v. Higgins*, 223 F.Supp. 396, 401 (D.N.D.1963); *compare* 49 U.S.C. § 1(6) *with* 49 U.S.C. § 1(14)(a). Finally, section 16(3)(b) provides that all complaints against carriers subject to Chapter 1 of the Act for recovery of damages not based on overcharges shall be filed with the Commission within two years from the time the cause of action accrues. Damages are covered by sections 8 and 9 of the Act, and these sections provide remedies for violations of chapter 1, not for breach of private contracts.[4] Moreover, the Commission's insistence that its findings concerning the privately fixed charges of the litigating parties were made in response to the court's request for advice and were significant for that purpose only, indicates that the Commission wished to play no role in disputes between carriers not parties to the litigation. Because neither the Commission's order nor the statute purported to deal in any way with the contract between Long Island and Seaboard, Long Island was entitled to pursue its common-law remedy for Seaboard's failure to perform. *See Central New England Ry. v. Boston & Albany R.R.*, 279 U.S. 415, 418–21, 49 S.Ct. 358, 73 L.Ed. 770 (1929). The six-year statute of limitations was therefore applicable to Long Island's counterclaim.

 Having urged the statute of limitations as a defense to Long Island's claim, Seaboard quickly discovered that it was in danger of being hoist with its own petard. Some of its claims for unpaid rentals were six years old, and section 16(3)(a) provides that actions by carriers for recovery of their charges must be brought within three years from the time the cause of action accrues. There was no merit in Seaboard's contention that this statute does not apply to Commission-prescribed rates. *See Louis-*

*ville & Nashville R.R. v. Central Iron & Coal Co.*, 265 U.S. 59, 65, 44 S.Ct. 441, 68 L.Ed. 900 (1924). Moreover, Seaboard could not avoid the statute on the theory that there was a running open mutual account between it and Long Island. *See Baggett Transportation Co. v. United States*, 319 F.2d 864, 869–70, 162 Ct.Cl. 570 (1963). There must be an express or implied agreement for a set-off of mutual debts before there can be a running mutual account. *Green v. Disbrow*, 79 N.Y. 1, 9–10 (1879); 36 *New York Jurisprudence*, Limitations and Laches, § 76.

In its original order, the district court held that section 16(3) would not bar recovery by either Long Island or Seaboard because it felt that section 16(3) had no application to a controversy involving carriers' inter-line accounts. 447 F.Supp. at 114. Upon rehearing, the district court noted that the Commission had held in I.C.C. Docket No. 35940, *In the Matter of Investigation into Lawfulness of Interchange Arrangements Between the Bangor and Aroostook Railroad and CP Rail at Brownville Junction, Maine* (1977), that section 16(3)(b) applies to claims between carriers. *Id.* at 115. The court held, however, that the Commission's interpretation changed settled law, *see Thompson v. St. Louis-San Francisco Ry.*, 218 F.2d 166 (8th Cir. 1954), *cert. denied*, 348 U.S. 964, 75 S.Ct. 525, 99 L.Ed. 752 (1955); *Atlantic Coast Line R.R. v. Baltimore and O.R.R.*, 12 F.Supp. 711 (D.Md.1935), and therefore refused to apply it "retroactively" to the instant case. *Id.* at 116.

 We see no need to consider the troublesome [5] question whether the decisions in *Thompson* and *Atlantic* are settled law which should be changed by prospective judicial interpretation only. Seaboard's right

---

4. It might well be argued that Long Island is not claiming damages for breach of contract but is seeking either the recovery of money due under the terms of the agreement, *see McCready v. Lindenborn*, 63 App.Div. 106, 111, 71 N.Y.S. 355 (1901), *aff'd*, 172 N.Y. 400, 65 N.E. 208 (1902); *Restatement of the Law of Contracts*, § 326 comment b; 10 *New York Jurisprudence*, Contracts, § 385 at 382, or the

restitution of money because of Seaboard's repudiation of those terms. *See* 5 *Corbin on Contracts* § 1108.

5. *See Linkletter v. Walker*, 381 U.S. 618, 622–29, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *cf. James v. United States*, 366 U.S. 213, 225, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (Black, J., concurring in part and dissenting in part).

to recover the $52,163.79 found by the district court to be due and owing to it, can be supported on much simpler grounds.

Prior to 1973, Long Island withheld a total of $23,235.18 from car-usage charges then owing to Seaboard and off-set or credited that amount against funds which Seaboard owed it under their contract.[6] It has so alleged in its answer. Long Island's retention of such funds as a credit is therefore a defense to its counterclaim which Seaboard may assert at any time. *Luchenbach Steamship Co. v. United States*, 312 F.2d 545, 549 n.3 (2d Cir. 1963). Any other rule would permit Long Island to convert the statute of limitations from a shield into a sword, a use for which the statute was never intended. *See Northern Pacific Ry. v. United States*, 277 F.2d 615, 623–24 (10th Cir. 1960).

The judgment and orders appealed from are affirmed with costs to defendant-appellee.

---

6. Of course, inasmuch as the balance of the total amount ($184,664.44) that Long Island withheld was withheld in 1973 or later, neither the three-year nor the six-year statute of limitations can bar Seaboard from collecting it.